UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                              Case No. 06-CR-273

JON BARTLETT, ANDREW
SPENGLER, DANIEL MASARIK,
RYAN PACKARD, and
RYAN LEMKE,

    Defendants.

**RECOMMENDATION AND ORDER ON DEFENDANTS' PRETRIAL MOTIONS**

## I. BACKGROUND

On October 19, 2006, a grand jury sitting in the Eastern District of Wisconsin returned a two-count indictment against Jon Bartlett ("Bartlett"), Andrew Spengler ("Spengler"), Daniel Masarik ("Masarik"), Ryan Packard ("Packard"), and Ryan Lemke ("Lemke"). Count One charges the defendants with conspiracy to violate constitutional rights while acting under color of law in violation of Title 18 U.S.C. § 241. Count Two charges the defendants with violation of constitutional rights while acting under color of law in violation of Title 18 U.S.C. §§ 2 and 242.

All of the defendants were arraigned on the indictment, and all defendants entered not guilty pleas to the charges. A final pretrial is scheduled to be conducted before the Honorable Charles N. Clevert on June 21, 2007, and a jury trial is scheduled to be conducted before Judge Clevert commencing on July 9, 2007. After a scheduling conference was held with government counsel and counsel for the defendants, a briefing schedule was entered by this court for all pretrial motions. In

accordance with that briefing schedule, a number of the defendants and the government have filed pretrial motions.

Bartlett filed a Motion for a Bill of Particulars (dkt. #56). Masarik filed a motion for a Bill of Particulars (dkt. #48), a Motion for Disclosure of *Brady* Material (dkt. #49), and a Motion for Severance (dkt. #50). Packard filed a Motion for Severance (dkt. #53), a Motion for a Bill of Particulars (dkt. #54), and a "Motion to Prohibit Government's Use of Ryan Packard's Testimony from *State v. Bartlett, et. al.*, in the Trial of this Case." (dkt. #55). The government has filed a Motion to Permit Disclosure of John Doe Transcripts and a Motion to Exclude Expert Testimony on Witness Identifications. On March 30, 2007, the government filed its response to the defendants' pretrial motions, and on April 16, 2007, defendants Masarik and Packard filed replies. Thus, the defendants' pretrial motions have now been fully briefed and are ready for resolution.

## II. DISCUSSION

### A. Motions for Bills of Particulars

Defendants Bartlett, Masarik, and Packard have all moved the court for a bill of particulars. Specifically, Bartlett argues that the government should be ordered to provide a bill of particulars with regard to Count Two setting forth the specific acts that Bartlett allegedly engaged in that demonstrated he was acting under "color of law." Likewise, Masarik argues that the government should be ordered to provide a bill of particulars setting forth the specific acts Masarik is alleged to have engaged in that demonstrate he was acting "under color of law." And, similarly, Packard moves the court for a bill of particulars with regard to Count Two of the indictment setting forth the specific acts Packard is alleged to have engaged in that demonstrate he was acting "under color of law."

2

In support of their motions, Bartlett, Masarik, and Packard, all make similar arguments that a review of the indictment as well as the approximately 8000 pages of discovery provided by the government, does not reveal how or in what manner these defendants were "acting under color of law" at the time of the alleged assault of Frank Jude, Jr. In response, the government argues that the indictment and discovery provided pursuant to the open-file policy fully inform the defendants of the charges and the government's evidence, such that each defendant can fashion an appropriate trial defense. The government further argues that the motions for bills of particulars are based upon the false proposition that in order to convict each defendant of Count Two the government must prove that each individual defendant was acting under color of law at the time of the alleged assault of Frank Jude, Jr. None of the defendants filed a reply brief in support of their respective motions for a bill of particulars.

Rule 7(f) of the Federal Rules of Criminal Procedure allows, in conjunction with the issuance of an indictment, for the filing of a bill of particulars. *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991); Fed. R. Crim. P. 7(f). A bill of particulars more precisely describes the illegal activities in which the defendant allegedly engaged, *Canino*, 949 F.2d at 949, and provides the defendant with information sufficient to prepare an adequate defense to the charges and to protect himself against double jeopardy. *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991).

In determining whether a bill of particulars is required, the court should consider the following factors: (1) whether the indictment states all of the elements of the offense charged; (2) whether the indictment sufficiently informs the defendant of the nature of the charge so that the defendant may prepare a defense; and (3) whether the defendant may plead the judgment as a bar to any later prosecution for the same offense. *United States v. Serola*, 767 F.2d 364, 369 (7th Cir.

3

1985). An indictment satisfies this standard by setting forth the elements of the offense charged, the time and place of the defendant's conduct which violated that offense, and citation to the statutes allegedly violated. *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003).

However, "a defendant has no right to discover, through a bill of particulars, the evidentiary details of the government's case." *United States v. Brock*, 863 F. Supp. 851, 867 (E.D. Wis. 1994). Nor is a bill of particulars intended to be used to reveal the theory of the government's case. *Glecier*, 923 F.2d at 502. Furthermore, "a bill of particulars is not required when information necessary for a defendant's defense can be obtained through 'some other satisfactory form.'" *Canino*, 949 F.2d at 949 (quoting Wright, *Federal Practice and Procedure: Crim.2d*, § 129, at 436-38 (1982)). For example, "the 'open-file' policy is an adequate 'satisfactory form' of information retrieval, making the bill of particulars unnecessary." *Id.*

Here, the indictment states all of the elements of the offenses charged, the approximate time and place of the defendants' conduct that constituted such offense, and provides citations to the statutes allegedly violated. Thus, the indictment sufficiently informs the defendants of the nature of the charges against them. Furthermore, the government is complying with its open file policy in this case, which gives each defendant full access to the evidence in the government's possession as set forth in Crim. L. R. 16.1, and further reduces the need for a bill of particulars. *See Canino*, 949 F.2d at 949. Thus, all of the defendants have already received (and will continue to receive) the information and materials identified in Crim. L. R. 16.1. Indeed, the bills of particulars sought by Bartlett, Masarik, and Packard would essentially identify the specific facts that the government intends to use to prove its case against them. This is not the purpose of a bill of particulars.

4

Simply put, I am persuaded that the information provided in the indictment and through the discovery pursuant to the government's open file policy is sufficient to allow defendants Bartlett, Masarik, and Packard to prepare adequate defenses. Consequently, and for all of the foregoing reasons, Bartlett, Masarik, and Packard's motions for a bill of particulars will be denied.

**B. Motion for Disclosure of *Brady* Material**

Masarik has moved the court for an order directing the government to immediately disclose any and all information and material which is known, or by the exercise of due diligence should be known, to the government and which may be favorable to the defendant on the issue of guilt or punishment pursuant to *Brady v. Maryland*, 373 U.S. 83 (1973). In support of his motion, Masarik asserts that "upon information and belief, one or more of the alleged co-conspirators, indicted or unindicted, named or unnamed, or one or more witnesses, provided a statement or statements to the government and/or its agent(s) pursuant to proffer agreement or otherwise, concerning the lack of involvement by Defendant Masarik in the physical altercation alleged to have taken place with Mr. Jude." (Mot. at 1, dkt. #49.)

In response, the government asserts that it recognizes its obligation to disclose exculpatory evidence under *Brady*, and has already provided the defense through discovery any information in the government's possession that is favorable to the defense. The government further asserts that should it come into possession of additional information that may be reasonably construed as exculpatory it will disclose such evidence to the defense. Defendant Masarik did not file a reply brief in support of his motion for disclosure of *Brady* material. Given the government assertions that it has followed and will continue to follow its obligations to disclose exculpatory evidence pursuant to *Brady*, and given that the defendant has not filed a reply refuting that the government has been

5

following its obligations pursuant to *Brady*, Masarik's motion for disclosure of Brady material will be denied as moot.

**C. Motions for Severance**

Masarik has moved the court for an order severing his trial from that of his codefendants. In support of his motion, Masarik argues that his joinder with any or all of his codefendants is prejudicial. With regard to Count One, Masarik argues that, because codefendants Bartlett, Packard, and Lemke have all testified as to having some physical contact with Jude, and Bartlett's prior testimony has placed Spengler in direct contact with Jude, Masarik's defense is contrary to his defendants. This is because Masarik has always maintained that he had no direct contact with Jude on October 24, 2004. With regard to Count Two, Masarik argues that, because he filled out an overtime card for the time he was placed on duty by a supervising officer at the scene, he has a conflicting defense with Lemke, as to whether he was acting under color of law, because Lemke is the only defendant who did not fill out an overtime card.

Packard has also moved the court for an order severing his trial on Count Two of the indictment from that of defendant Lemke. Packard makes the same argument as Masarik, i.e., that because Packard filled out an overtime card for the time he was on duty at the scene on October 24, 2004, Packard has a conflicting defense vis-a-vis defendant Lemke, as it relates to whether he was acting under color law at the time of the alleged deprivation of constitutional rights.

In response, the government argues that Masarik and Packard have not shown antagonistic defenses such that the court should be compelled to sever the trials of these codefendants. With regard to Count One, Masarik's anticipated defense that he was not a member of the conspiracy and had no direct contact with Mr. Jude on October 24, 2004 is not irreconcilable or mutually exclusive

of the anticipated defenses of all of his codefendants, that is, that they were either not members of the conspiracy or their contact with Mr. Jude was privileged by law. With regard to Count Two, the government asserts that neither Masarik nor Packard have shown irreconcilable or mutually exclusive defenses as to defendant Lemke. According to the government, this is because the government need not prove that each individual defendant was acting under color of law, but rather, it is sufficient for the government to establish that an individual defendant was a willful participant with another who was acting under color of law. Thus, according to the government, "there is essentially no significance to the nonexistence of an overtime card for Lemke." (Gov't's Resp. at 12.) Neither Masarik nor Packard filed a reply brief in support of their respective motions for severance.

Charges against multiple defendants may be brought in a single indictment if the defendants are alleged to have participated in the same series of acts or transactions which constitutes the offense. Fed. R. Crim. P. 8(b). Here, that requirement is met because the indictment alleges that each of the defendants participated in a conspiracy to injure, oppress, threaten, and intimidate Frank Jude and Lovell Harris in the exercise of their constitutional right to be free from unreasonable seizure. However, "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

Nevertheless, "[t]here is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (citations omitted). In fact, "when defendants properly have been joined under Rule 8(b), a district court should grant a severance under

Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id*. at 539. "In all but the most unusual circumstances, the risk of prejudice arising from a joint trial is outweighed by the economies of single trial in which all facets of the crime can be explored once and for all." *United States v. McClurge*, 311 F.3d 866, 871 (7th Cir. 2002) (internal quotations omitted). A defendant must show that failure to sever would result in a deprivation of his right to a fair trial; "it is insufficient that separate trials would have given a defendant a better opportunity for an acquittal." *United States v. Souffront*, 338 F.3d 809, 828 (7th Cir. 2003) (internal quotations omitted). Stated another way, the movant has the burden of showing that failure to sever will result in actual prejudice.

Simply put, neither Masarik nor Packard has shown that failure to sever his trial will result in actual prejudice. As set forth above, both Masarik and Packard argue that their respective motions for severance should be granted because each will be presenting defenses that will be contrary to the defenses of their codefendants. Yet, it does not appear that the defenses of Masarik, Packard, and their codefendants will be mutually antagonistic. Defenses are mutually antagonistic when "acceptance of one defendant's defense will preclude the acquittal of the other defendant." *United States v. Carrillo*, 435 F.3d 767, 778 (7th Cir. 2006) (internal quotations omitted).

And, here, the jury's acceptance of Masarik's argument that he had no direct physical contact with Mr. Jude on October 24, 2004, will not preclude the jury from also finding that his codefendants, who did have direct physical contact with Mr. Jude on October 24, 2004, were either not involved in the conspiracy or their contact with Mr. Jude was privileged by law. Similarly, even assuming that the jury accepts Lemke's alleged defense that because he did not fill out an overtime

8

card he was not acting "under color of law" at the time of the alleged assault, that does not preclude the jury from also accepting Masarik and Packard's defense that although they did fill out overtime cards, they were also not acting under color of law at the time of the alleged assault. Furthermore, given that the government need not prove that each individual defendant was acting in an official capacity at the time of the alleged assault, it is unlikely that the nonexistence of an overtime card for Lemke will, as argued by defense counsel, lead to a presumption that the other defendants, who did fill out overtime cards, were acting under color of law. *See United States v. Price*, 383 U.S. 787, 794 (1966) ("Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of [18 U.S.C. § 242]." To act "under color" of law does not require that the accused be an officer of the state. It is enough that he is a willful participant in joint activity with the state or its agents."). In any event, as the Seventh Circuit has stated, the "occurrence of mutually antagonistic defenses is generally not sufficient grounds to require severance." *United States v. Olson*, 450 F.3d 655, 677 (7th Cir. 2006). This is because "[m]utually antagonistic defenses are not prejudicial *per se*." *Id.* (citing *Souffront*, 338 F.3d at 831.)

Both Masarik and Packard also argue that given the high number of defendants, competing defenses and varying degrees of culpability, the court should grant the defendants' motions for severance. In my view, a joint trial of all of the defendants in this action will not prevent the jury from making reliable judgments about the guilt or innocence of each individual defendant. In the end, I am not persuaded that "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Consequently, and for all of the foregoing reasons, Masarik and Packard's motions for severance will be denied.

9

**E. Motion to Prohibit the Government's Use of Packard's Testimony in *State of Wisconsin v. Bartlett et al.*[1]**

Packard has moved the court for an order prohibiting the government from using his testimony at the trial of *State of Wisconsin v. Bartlett et al*, at the trial of this action. In support of his motion, Packard asserts that his testimony in *State v. Bartlett et al* was compelled because pursuant to the mandatory rules and procedures of the Milwaukee Police Department, he would have been penalized had he invoked his Fifth Amendment privilege to remain silent. In response, the government notes that at the trial of *State v. Bartlett et al*, Packard testified that he voluntarily complied with the subpoena and thus, was testifying voluntarily. The government further asserts that the Milwaukee Police Department regulations do not require officers to waive the Fifth Amendment privilege when testifying pursuant to a subpoena.

In *Garrity v. State of New Jersey*, 385 U.S. 493 (1967), the Supreme Court held that where police officers were faced with the choice between "self-incrimination or job forfeiture," the resulting statements were not voluntary, and thus, could not be used against the officers in subsequent criminal proceedings. *Id.* at 497-98. The free choice to remain silent had been foreclosed such that the penalty of discharge had the effect of compelling self-incriminating testimony. To be sure, the Supreme Court has repeatedly made clear that the government cannot impose penalties because a person elects to exercise his Fifth Amendment right not to give incriminating testimony against himself. As was summed up in *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977), the cases "settle that

---

[1] Packard's motion could reasonably be construed to be akin to a motion in limine, in which case this court would defer entirely to the trial judge a ruling on the motion. However, because Packard is asserting that his prior trial testimony was compelled, the court will treat the motion as being akin to a motion to suppress, and will issue a recommendation with respect thereto.

government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized." *Id.* at 806.

The Seventh Circuit has not specifically adopted a test to determine whether a defendant's statement was compelled for purposes of *Garrity* immunity. Other courts that have addressed the question have adopted a two-part subjective/objective analysis to determine if *Garrity* immunity applies to a particular statement. *See State v. Brockdorf*, 291 Wis. 2d 635, 652; 717 N.W.2d 657, 665 (2006); *see also United States v. Friedrick*, 842 F.2d 382, 395 (D.C. Cir. 1988); *McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005); *United States v. Vangates*, 287 F.3d 1315 (11th Cir. 2002); *United States v. Najarian*, 915 F. Supp. 1460, 1478-79 (D. Minn. 1996). Pursuant to the subjective/objective test, "in order for statements to be considered compelled by a threat of discharge (1) a person must subjectively believe that he will be fired for asserting his Fifth Amendment privilege to remain silent, and (2) that belief must be objectively reasonable under the circumstances." *Brockdorf*, 291 Wis. 2d at 652; *Id.* at 665.

The First Circuit Court of Appeals has applied a similar standard to determine whether a statement is entitled to *Garrity* immunity without specifically adopting the subjective/objective test. In *United States v. Indorato*, a police officer claimed that he was entitled to *Garrity* immunity because he was implicitly threatened with termination for refusing to answer questions in an investigation. 628 F.2d 711, 715 (1st Cir. 1980). The officer argued that, based upon the police department's rule that officers are required to obey the lawful orders of superiors, he was implicitly threatened with termination if he invoked his Fifth Amendment privilege. The First Circuit rejected the officer's claim, concluding that nothing in the record suggested that the rules meant an officer

11

who refused on Fifth Amendment grounds to comply with an order to provide self-incriminating statements would be dismissed. *Id.* at 716. The *Indorato* court noted that the officer was not "within the ambit of the coerced testimony doctrine" of *Garrity*:

> In all of the cases flowing from *Garrity*, there are two common features: (1) the person being investigated is explicitly told that failure to waive his constitutional right against self-incrimination will result in his discharge from public employment (or a similarly severe sanction imposed in the case of private citizens); and (2) there is a statute or municipal ordinance mandating such procedure. In this case, there was no explicit "or else" choice and no statutorily mandated firing is involved. We do not think that the subjective fears of defendant as to what might happen if he refused to answer his superior officers are sufficient to bring him within *Garrity*'s cloak of protection.

*Id.* at 716. Simply put, I agree with the Wisconsin Supreme Court that the analyses in *Indorato* and *Friedrich* (the subjective/objective test) are functionally equivalent. *See Brockdorf*, 291 Wis. 2d at 654; 717 N.W.2d at 666.

That said, evening assuming *Indorato* and *Friedrich* and its progeny represent two distinct lines of authority, I am not persuaded that under either analysis Packard's testimony should be afforded *Garrity* immunity. Indeed, here, as in *Indorato*, there was no explicit, "or else" choice presented to Packard when he received and voluntarily complied with the subpoena to testify as a witness at the trial of *State of Wisconsin v. Bartlett et al.* And, here there was no "statutorily mandated" firing involved if Packard had invoked his Fifth Amendment privilege on the stand. To be sure, Milwaukee Police Department Rule 3/150.80 states that "[m]embers are required to honor all subpoenas for court appearances and quasi-judicial hearings," and Rule 4-2/010.00 states that failure to "abide by the provisions of the Department's Rules and Procedures Manual . . . shall be considered neglect of duty and shall subject such members to disciplinary action." (Def.'s Mot., Ex. 3, 4.). However, the rules make no mention of an officer's invocation of the Fifth Amendment

12

privilege.  Nor do the rules make any mention of any adverse consequences, let alone termination, if an officer chooses to comply with a subpoena, take the stand, and invoke his Fifth Amendment privilege in response to a certain question.

Likewise, under the subjective/objective test, I am not persuaded that Packard's subjective belief that he would be fired if he elected to invoke his Fifth Amendment privilege was objectively reasonable.  In other words, even assuming that Packard subjectively believed he would have been fired for asserting the privilege against self-incrimination, this subjective belief, given the totality of the circumstances was objectively unreasonable.  This is because there was no express threat communicated to Packard that if he invoked his Fifth Amendment right to remain silent while complying with the subpoena, he would lose his job.  Nor is there any "state law, ordinance, departmental regulation, or longstanding departmental policy that [forced Packard] to choose between job loss and self-incrimination."  *Brockdorf*, 291 Wis. 2d at 658; 717 N.W.2d at 669.  Indeed, Packard's "dismissal was not an imminent consequence of [his invoking the privilege]." *Id.* Furthermore, in light of the totality of the circumstances, that is, the plain language of the Department's rules requiring officers "to honor all subpoenas for court appearances," the undisputed evidence that Packard testified that he had *voluntarily* complied with the subpoena, as well as the fact that Packard had been disciplined for other alleged Departmental rule violations, I am satisfied that the facts and circumstances Packard was facing were not so coercive as to render his testimony involuntary.  *See People v. Sapp*, 934 P.2d 1367, 1372 (Colo. 1997) ("[C]ourts applying *Garrity* in non-automatic penalty situations have emphasized that ordinary job pressures, such as the possibility of discipline or discharge for insubordination, are not sufficient to support an objectively reasonable expectation of discharge.").

13

Consequently, and for all of the foregoing reasons, I am satisfied that Packard's testimony in *State of Wisconsin v. Bartlett et al* was not involuntary and coerced such that it should be afforded *Garrity* immunity. Such being the case, it will be recommended that Packard's Motion to Prohibit the Government's use of Packard's Testimony in *State of Wisconsin v. Bartlett et al*, be denied.

**F. Government's Motion To Permit Disclosure of John Doe Transcripts**

The government has moved the court for an order permitting the United States to disclose John Doe transcripts to counsel for defendants Lemke and Packard. In support of its motion, the government asserts that on February 23, 2007, the United States Attorney obtained an order from Milwaukee County Circuit Judge Bonnie Gordon permitting the United States Attorney and defense counsel to use the John Doe transcripts in this action. Judge Gordon ordered that the parties in this action treat the John Doe transcripts as if they were grand jury transcripts pursuant to Federal Rule of Criminal Procedure 6. Given that the government and counsel for Bartlett, Masarik, and Spengler are now in possession of the John Doe transcripts, the government seeks an order permitting the government to disclose the transcripts to counsel for Lemke and Packard.

On March 5, 2007, Attorney Jonathan Smith, counsel for Masarik, filed a letter requesting that, if the court grants the government's motion to permit disclosure of the John Doe transcripts, counsel for Bartlett, Masarik, and Spengler also be provided with the same copies of such transcripts, given that the government has likely had these transcripts bate-stamped. The government has not objected to Attorney Smith's request. Such being the case, the court will order that the United States Attorney disclose the Milwaukee County John Doe transcripts to counsel for all defendants. The court will further order that use of the John Doe transcripts by all counsel in this action, including

14

any other dissemination, be governed by Fed. R. Crim. P. 6 and Criminal Local Rules 6.2 and 16.1(d).

**G. Government's Motion to Exclude Expert Testimony on Witness Identifications**

On March 1, 2007, Masarik filed a notice of expert testimony pursuant to Federal Rule of Criminal Procedure 16, notifying the government that he intends to call Dr. Otto Maclin as an expert witness at trial. On March 28, 2007, the government filed a motion to exclude Dr. Otto Maclin's expert testimony regarding witness identifications, and, on April 16, 2007, Masarik filed a response to the government's motion to exclude the expert testimony of Dr. Maclin.

In support of its motion, the government argues that the proffered expert testimony of Dr. Otto Maclin regarding eyewitness identifications is disfavored in the Seventh Circuit. Indeed, in *United States v. Hall*, the Seventh Circuit noted that expert testimony regarding the reliability of eyewitness identification "will not aid the jury because it addresses an issue of which the jury is already generally . . . aware, and it will not contribute to their understanding of the particular dispute." 165 F.3d 1095, 1104 (7th Cir. 1999). In *Hall*, the Seventh Circuit also stated that "the credibility of eyewitness testimony is generally not an appropriate subject matter for expert testimony because it influences a critical function of the jury–determining the credibility of witnesses." *Id.* at 1107. The government also asserts that Dr. Maclin's testimony should be excluded pursuant to Federal Rule of Evidence 403 because if Dr. Maclin testifies, the government will need to call its own eyewitness identification expert, thus leading to a "battle of experts" and confusion of the issues.

Simply put, the government's motion to exclude expert testimony regarding eyewitness identifications is more akin to a motion in limine. Such being the case, I believe it would be more appropriate for Judge Clevert, who will be presiding over the trial of this action, to decide the

15

government's motion to exclude Dr. Maclin's testimony. Thus, I will not address the government's motion to exclude Dr. Maclin's testimony and will defer entirely a ruling on such motion to Judge Clevert.

### III. RECOMMENDATION AND ORDERS

**NOW THEREFORE IT IS RECOMMENDED** that Packard's Motion to Prohibit Government's Use of Ryan Packard's Testimony from *State of Wisconsin v. Bartlett, et al*, in the Trial of this Case (dkt. #55), be **DENIED**;

**NOW THEREFORE IT IS ORDERED** that Bartlett's Motion for a Bill of Particulars (dkt. #56) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Masarik's Motion for a Bill of Particulars (dkt. #48) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Packard's Motion for a Bill of Particulars (dkt. #54) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Masarik's Motion for Disclosure of *Brady* Material (DKT. #49) be and hereby is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED** that Masarik's Motion for Severance (dkt. #50) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that Packard's Motion for Severance (dkt. #53) be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the government's Motion to Permit Disclosure of John Doe Transcripts be and hereby is **GRANTED**;

16

**IT IS FURTHER ORDERED** that the use of the John Doe transcripts by all counsel in this action, including any other dissemination, be governed by Fed. R. Crim. P. 6 and Criminal Local Rules 6.2 and 16.1(d).

Your attention is directed to 28 U.S.C. § 636(b)(1)(A) - (C), Federal Rule of Criminal Procedure 59(a) - (b), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order or recommendation herein or part thereof may be filed within ten days of the date of service of this recommendation and order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to object in accordance with the rules cited herein waives your right to review.

**SO ORDERED** this 1st day of May, 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge